2 of 100 DOCUMENTS

**UNITED STATES OF AMERICA, Plaintiff-Appellee, v. JAMES M. SHORTT, Defendant-Appellant.**

**No. 06-4774**

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

**485 F.3d 243; 2007 U.S. App. LEXIS 11019**

**February 2, 2007, Argued**
**May 10, 2007, Decided**

**PRIOR HISTORY:** [**1]

Appeal from the United States District Court for the District of South Carolina, at Columbia. (3:05-cr-01011-JFA). Joseph F. Anderson, Jr., Chief District Judge.

**DISPOSITION:** AFFIRMED.

**COUNSEL:** ARGUED: Allen Bethea Burnside, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellant.

Winston David Holliday, Jr., Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

ON BRIEF: Reginald I. Lloyd, United States Attorney, Jane B. Taylor, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

**JUDGES:** Before NIEMEYER, WILLIAMS, and GREGORY, Circuit Judges. Judge Niemeyer wrote the opinion, in which Judge Williams and Judge Gregory joined.

**OPINION BY:** NIEMEYER

**OPINION**

[*244]

NIEMEYER, Circuit Judge:

Dr. James M. Shortt pleaded guilty to one count, of a 43-count indictment, charging him with participating in a seven-year conspiracy to distribute and dispense and to cause to be distributed and dispensed anabolic steroids and human growth hormone, in violation of 21 U.S.C. §§ 841(a)(1), 333(e) [**2] , and 846. The 2004 version of the Sentencing Guidelines, which contained no provision to address the illegal distribution of human growth hormone and certain forms of anabolic steroids, provided for an offense level of 6, for a sentencing range of zero to six months' imprisonment. Considering this deficiency in the Sentencing Guidelines, as well as factors listed in 18 U.S.C. § 3553(a), the district court imposed a variance sentence of imprisonment of 12 months and 1 day.

On appeal, Shortt challenges his sentence as unreasonable, arguing principally that the factors the district court considered were already accounted for in the sentence recommended by the Sentencing Guidelines or otherwise should not have been considered. Concluding that the district court, in the circumstances of this case, did not abuse its discretion in imposing a variance sentence, we affirm.

I

Dr. Shortt, a physician licensed in South Carolina and Wisconsin, practiced medicine in Columbia, South Carolina, since at least 1998. As a regular and substantial part of his practice, Shortt prescribed and dispensed anabolic steroids and human growth hormone to athletes [**3] solely to enhance their performance. For bodybuilders not subject to testing, Shortt prescribed injectable steroids. For athletes subject to testing, he designed programs, drugs, and testing to avoid discovery of the athletes' use of such steroids and human growth hormone. Professional athletes relying on Shortt flew into Columbia "from all over the country," and they included more than one-half dozen professional football players from the National Football League's Carolina Panthers.

To hide the athletes' use of steroids and human growth hormone, Shortt prescribed substances in forms that carried fewer detectable chemical by-products. He also monitored athletes' testosterone levels to be sure that they remained within ranges that aroused no suspicion--"blew no whistles," as he repeatedly said. Typifying his

counseling is the following excerpt from an audiotape recording of Shortt's conversation with a football player:

> And for you guys [professional football players], what I am looking for is nondetectable performance enhancement. So, immune modulation is always a good thing. Natural testosterone is always a good thing. And when we get to it in a minute--get to it in a [**4] minute, you could probably do well with a little bit of growth hormone. Actually, you could do with a medium amount of growth hormone.
>
> So that's--that's all I would do with you right there. A small amount of DHEA, not enough to blow any whistles, and testosterone. USP testosterone.
>
> Now, ways to deliver it. Don't use a shot, because that's always got a carrier molecule on it. A cream, a gel, or a buccal. Now, you can't swallow it, your stomach will degrade it. But you can get troches [lozenges], put them between your cheek and your gum. And in [*245] you guys' cases, I would probably use the cream. And the reason for that is, it wouldn't take much of a stretch for somebody to say, okay, spit in the cup. And if you do, you will come up sky high on it, should somebody test it. Nobody has, you know. It's in their best interest to level the playing field, but it's not in their best interest to bust the whole damn team, you know. I mean, really. So, they're not going to want to do that. So, a little bit of testosterone will probably start you out.

Following an undercover investigation of Dr. Shortt's medical practice, Shortt was indicted by a grand jury for participating in a seven-year [**5] conspiracy (1998-2005) to dispense anabolic steroids and human growth hormone "not for legitimate medical purposes and outside the usual course of professional practice," in violation of 21 U.S.C. §§ 841(a)(1), 333(e), and 846. He was also charged in 42 counts alleging overt acts over a period of three and one-half years (2001 through mid-2004) during the course of the conspiracy.

Pursuant to a plea agreement, Shortt pleaded guilty to the conspiracy count, and during the course of pleading guilty, he admitted to the facts proffered by the government, including the facts and drug quantities alleged in the 42 counts of overt acts.

The presentence report recommended a sentencing offense level of 6, pursuant to U.S.S.G. § 2D1.1(c)(17) (2004). The report also recommended a two-level enhancement under U.S.S.G. § 3B1.3 for Shortt's use of a special skill as a doctor and a two-level reduction under § 3E1.1(a) for acceptance of responsibility. The final offense level of 6, combined with a criminal history category I, yielded a sentencing range of zero to six months' [**6] imprisonment. In setting forth these calculations, the presentence report noted that the Guidelines do not address steroids "in cream form" or in the form of "a troche, which is similar to a lozenge and is taken orally and sucked until it is dissolved." The report pointed out that a troche is distinguishable from a pill, capsule, or tablet, which is addressed in the Guidelines. The presentence report also observed that the Sentencing Commission had "not promulgated a guideline for violations of 21 U.S.C. § 333(e)," which prohibits the distribution of human growth hormone. [1] In the absence of an explicit guideline, the probation officer determined the offense level for distribution of human growth hormone by reference to the "amount paid by the user of the substance," but this reference did not increase the sentence as calculated solely for the distribution of steroids. At the conclusion of the report, the probation officer noted that he had no information "concerning the offense or the offender which would warrant a departure from the prescribed Sentencing Guidelines." He did note, however, that the U.S. Attorney indicated "he will file a motion for a variance [**7] prior to sentencing in which he will request that the court sentence a defendant outside the [*246] applicable guideline range, pursuant to 18 U.S.C. § 3553(a)(2)(A) and (B)."

1 By an emergency amendment adopted in 2006, following Congress' enactment of the Anabolic Steroid Control Act of 2004, Pub. L. No. 108-358, 118 Stat. 1661, the Sentencing Commission prescribed new conversion ratios for anabolic steroids distributed as topical creams or lozenges, filling the gap left for steroids in those forms in the prior version of the Sentencing Guidelines. *See* U.S. Sentencing Comm'n, *Supplement to the 2005 Guidelines Manual* (2006). The Sentencing Commission also boosted the drug equivalency ratio of anabolic steroids to "units," deeming a "unit" to equal 0.5 ml. of steroids--a 20-fold increase from the preexisting ratio. *See id.* § 2D1.1(c) n.F. The amendment, however, still left human growth hormone unaddressed, and to date, there is no applicable guideline for the illegal

distribution of this hormone.

[**8] The district court conducted a lengthy sentencing hearing, receiving the testimony of witnesses and the arguments of counsel. The court then observed that neither party had objected to the presentence report and accepted its recommendations as accurate calculations under the Sentencing Guidelines. After considering the factors contained in 18 U.S.C. § 3553(a), however, the court decided to impose a variance sentence because "a sentence within the zero to six-month range [as recommended by the Sentencing Guidelines] does not serve the factors of § 3553(a)." It sentenced Shortt to 12 months and 1 day's imprisonment. As the court stated, "By ordering a sentence of 12 months and 1 day [Shortt] will be eligible to earn good time credit and can thereby reduce his sentence by 15 percent." The court identified two § 3553(a) factors that were not adequately served by the Guidelines' recommended sentence: (1) the nature and circumstances of the offense, *see* § 3553(a)(1); and (2) "the need for the sentence imposed to reflect the seriousness of offense, to promote respect for the law, and to provide just punishment for the offense," *see* § 3553(a)(2)(A). [**9] The court then gave seven reasons that prompted it to select the variance sentence that it imposed.

*First*, Shortt made elaborate efforts to conceal his wrongdoing. As the court stated, "The bodybuilders, who were not tested, were given straight injectable anabolic steroids, whereas the athletes were treated with methods designed to conceal the use of contraband."

*Second*, the court was troubled by the defendant's "cavalier attitude" toward the use of steroids, referring to how Dr. Shortt and the professional football players joked about being caught.

*Third*, the court pointed to the scope of the offense. During the three and one-half year period for which the government had records of Shortt's conduct, Shortt made "139 dispensations of anabolic steroids, either for prescriptions or refills. And these include[d] 1217 milliliters of injectable anabolic steroids, 1110 milliliters of anabolic steroid cream, 225 troches or lozenges, and 225 anabolic steroid tablets. By the defendant's own admission he had athletes, 'flying from all over,' to receive his services."

*Fourth*, the court observed that because human growth hormone was not specifically addressed by the Sentencing [**10] Guidelines, the Guidelines' recommended sentence did not reflect the seriousness of the offense. The court stated, "The end result is there is no penalty imposed at all because of the use of prescriptions for the human growth hormone."

*Fifth*, the court referred to the fact that Shortt dispensed steroids to an overweight teenager (15 years old)--a particularly vulnerable victim. The court recognized that it was not clear whether there might have existed a medical need for the treatment, but nonetheless observed that dispensing steroids to convert the teenager's fat into muscle was consistent with Shortt's other illegal conduct in this case.

*Sixth*, the court concluded that it could not ignore the fact that the steroids were dispensed to professional athletes. As the court stated:

> Performance-enhancing drugs such as human growth hormone and steroids irreparably tarnish the career achievements of many athletes whose records and accomplishments are called into question. In that sense then the victims of crimes such as the one at issue here include not only the athletes themselves, [*247] but also sports fans in living rooms all over the country.

*Seventh* and finally, [**11] the court pointed to Shortt's lack of remorse. Even during allocution, Shortt stated that he considered the dispensation of steroids and human growth hormone "somewhat equivalent to healing and repairing."

From the district court's judgment, Shortt filed this appeal, raising the single question of whether the district court imposed an unreasonable sentence by improperly applying the § 3553(a) factors.

II

Following *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), our procedure for sentencing has become established. A sentencing court must begin by properly calculating the sentencing range under the Sentencing Guidelines. It must then determine "whether a sentence within that range . . . serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006) (quoting *United States v. Green*, 436 F.3d 449, 456 (4th Cir. 2006)). When a district court concludes that a "variance" sentence--one outside the recommended Guideline range, *see Moreland*, 437 F.3d at 432--better serves the [**12] purposes of sentencing as stated in § 3553(a)(2), we review the district court's sentencing judgment for abuse of discretion. *See Green*, 436 F.3d at 457.

Applying the 2004 version of the Sentencing Guidelines, the presentence report in this case recommended an offense level of 6 for a sentencing range of zero to six months' imprisonment and identified no grounds for a departure. Neither the government nor the defendant challenged this conclusion, and the district court accepted the recommendation as a correct application of the Sentencing Guidelines. Likewise, on appeal, neither party challenges the application of the Sentencing Guidelines or the Guidelines' recommended sentence of zero to six months' imprisonment.

Because the court found, however, that a sentence within the range of zero to six months would not adequately serve the sentencing purposes mandated by Congress in 18 U.S.C. § 3553(a), it imposed a variance sentence of 12 months and 1 day's imprisonment. The issue of reasonableness raised on this appeal thus depends on whether the district court properly applied the § 3553(a) factors.

Section 3551 of Title 18 mandates that defendants [**13] be sentenced for federal offenses "in accordance with the provisions of this chapter so as to achieve *the purposes* set forth in subparagraphs (A) through (D) of Section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case." (Emphasis added). That specific mandate is repeated in the first sentence of § 3553(a), which provides: "The court shall impose a sentence sufficient, but not greater than necessary, to comply with *the purposes* set forth in paragraph (2) of this subsection." (Emphasis added); *see also* 28 U.S.C. § 991(b)(1). Section 3553(a) then provides that in determining a particular sentence, a sentencing court must consider seven enumerated *factors*. [2] Thus, § 3553(a) [*248] serves two functions. First, it prescribes that every sentence comply with the four announced *purposes* for sentencing. Second, it lists seven *factors* that a court must consider in determining a particular sentence, and included as one of the factors is the list of announced purposes for sentencing in § 3553(a)(2).

2 Section 3553(a) of Title 18 provides in full:

> (a) Factors to be considered in imposing a sentence. The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for --
>
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
>
> (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28; and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

[**14] A sentence that does not serve the announced purposes of § 3553(a)(2) is unreasonable. *See Moreland*, 437 F.3d at 434; *Green*, 436 F.3d at 456-57. Likewise, a sentence that is greater than necessary to serve those purposes is unreasonable. *See* 18 U.S.C. § 3553(a) (requiring the imposition of a sentence "sufficient, but not greater than necessary"). Because the Sentencing Guidelines were designed to achieve the § 3553(a)(2) purposes, *see* 28 U.S.C. § 991(b), 994(a);

U.S.S.G. § 1A1.1 cmt. (historical review of original introduction), a sentence selected from the range recommended by the Sentencing Guidelines is presumptively reasonable. *See United States v. Johnson*, 445 F.3d 339, 342-43 (4th Cir. 2006); *Green*, 436 F.3d at 457. Of course, the presumption is rebuttable, and therefore a variance sentence is not presumptively unreasonable. But a variance sentence must, to be reasonable, serve the four sentencing purposes of § 3553(a)(2).

The sentencing *purposes* identified in § 3553(a)(2)(A) to (D) are the four [**15] foundational purposes of sentencing that have long prevailed throughout our jurisprudence--(1) [*249] punishment, (2) deterrence, (3) incapacitation, and (4) rehabilitation. *See generally* Ilene H. Nagel, *Structuring Sentencing Discretion: The New Federal Sentencing Guidelines*, 80 J. Crim. L. & Criminology 883 (1990). Although still relevant, the fourth purpose, rehabilitation, was recognized by Congress and the Sentencing Commission to be insufficient, standing on its own, to justify a particular sentence. S. Rep. No. 98-225, at 38 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3221. The Sentencing Reform Act of 1984 came about in response to widespread dissatisfaction with the existing system of indeterminate sentencing, which was "characterized by unwarranted disparity and by uncertainty about the length of time offenders will serve in prison." *Id.* at 49, *as reprinted in* 1984 U.S.C.C.A.N. at 3232. This existing system was "largely based on an *outmoded rehabilitation model*" (emphasis added), which led to inconsistent terms of imprisonment without success in rehabilitating prisoners. *Id.* at 38, *as reprinted in* 1984 U.S.C.C.A.N. at 3221. While [**16] Congress did not, in the 1984 Act, abandon rehabilitation as a sentencing purpose, it nonetheless intended that purpose to have a reduced importance. To reform the system, it elevated the other three purposes--just punishment, deterrence, and incapacitation. Indeed, the Senate Committee drafting the Act placed special emphasis on the first stated purpose (§ 3553(a)(2)(A))--the need "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." *Id.* at 75, *as reprinted in* 1984 U.S.C.C.A.N. at 3258. As it observed, the first purpose "should be reflected clearly in *all* sentences." *Id.* (emphasis added).

The proper application of § 3553(a) therefore requires a sentencing court to focus on the four *purposes* of sentencing, as applicable in a particular case, and to consider, in determining a sentence that achieves those purposes, the seven *factors* listed in § 3553(a)(1)-(7). A sentence that fails to fulfill the purposes cannot be saved, even if it is supported by consideration of the six other factors.

In this case, the district court recognized that the last two purposes--§ 3553(a)(2)(C) (the need [**17] to incapacitate) and § 3553(a)(2)(D) (the need to rehabilitate)--were not implicated by the circumstances. Rather, at the heart of the sentencing court's concern was the question whether a zero to six months' sentence of imprisonment properly reflected the seriousness of Shortt's offense and provided a just punishment for it (§ 3553(a)(2)(A)). The court correctly understood that a failure to recognize the seriousness of the offense would promote disrespect for the law.

Reviewing the circumstances of this case in light of the stated purposes for sentencing, we conclude that the district court's concerns were well founded and that it acted within its discretion in imposing the variance sentence.

A doctor's illegal dispensing of steroids and human growth hormone has a particularly pernicious effect. In the name of enhancing athletic performance, a doctor dispensing steroids and human growth hormone exposes an athlete to numerous health risks, including extreme mood swings, liver and kidney tumors, liver and prostate cancer, heart attacks, high blood pressure, and infertility. *See* H.R. Rep. No. 108-461(I), at 5. The perversion of the doctor's professional responsibility to prescribe [**18] drugs for the health of his patients is at the core of the violation's seriousness. Indeed, it was this seriousness of conduct that had drawn the attention of Congress, even at the time of the conspiracy in this case, prompting it to direct the Sentencing Commission to increase penalties for the [*250] illicit dispensing of anabolic steroids. *See* Anabolic Steroids Control Act of 2004, Pub. L. 108-358, 118 Stat. 1661.

The maximum sentence for such violations--under either 21 U.S.C. § 841(a)(1) or 21 U.S.C. § 333(e)--is five years' imprisonment. Yet, the Sentencing Guidelines applicable to Shortt's conduct recommended a sentence of only zero to six months' imprisonment. The district court concluded, and we agree, that this sentence, in the circumstances of this case, failed, for several reasons, to reflect the severity of Shortt's offense.

First, Shortt's illegal conduct lasted almost seven years, and the charged overt acts, which were found as sentencing facts by the district court, have been detailed over a period of three-and-a-half years. Shortt illegally prescribed steroids and human growth hormone at least 139 times during that three-anda-half-year [**19] period. Moreover, Shortt's conduct was not localized to Columbia, South Carolina, but was national in scope. By Shortt's own admission, athletes were "flying in from all

over." This crime was not a single passing aberration, but a premeditated, extensive course of conduct that had far-reaching consequences.

Second, the district court was legitimately concerned with the aggressive state of mind, the contumacy with which Shortt violated the law. As the court observed, Shortt and the athletes were "cavalier" about the violations, joking about being caught. Even at sentencing, Shortt rationalized that the substances were "healing and repairing," not injuring, the athletes. The court was particularly moved by the conniving nature of the enterprise. As the district court explained:

> I heard three of [these audiotapes] with three professional football players, and it was--I don't want to say it was a cockiness, but it was a kind of an almost a flaunting of the NFL drug testing. And I don't think I can say he was coaching them on how to avoid detection, but he said we give it to you in this fashion, they won't pick it up as much, and then you come back and we will test you again, [**20] if we need to bump it up or down to avoid detection. I mean, it was a give and take with the athlete on how to skirt the rules.

Third, the conspiracy reflected a protracted perversion of Shortt's medical expertise, as reflected by his extensive planning and by the efforts he made to conceal his scheme. As the district court noted, Shortt treated his athletes with "methods designed to conceal the use of the contraband. And these included things such as monitoring the ratios of testosterone for precursor and by-product chemicals, avoiding certain anabolic steroids specifically tested for, prescribing nondetectable human growth hormone."

Fourth, as the district court noted, Shortt's conspiracy subverted professional sports as an institution and the roles that professional athletes play in this country. While Shortt might be correct in placing fault on that institution and the players, doing so does not excuse his own contributions. Because professional sports have a special significance in our culture and the players serve as role models for the young, any illegal conduct that has the effect of undermining professional sports is more serious than illegal conduct with merely local [**21] effects. As the district court stated, "None of us can deny that steroids in professional sports is a big, big issue in this country right now"; "the victims of crimes such as the one at issue here include not only the athletes themselves, but also sports fans in living rooms all over the country."

Fifth and finally, the Sentencing Guidelines' recommended sentence failed to account [*251] for the illegal distribution of human growth hormone and the distribution of some forms of steroids that were involved in this case. After reviewing the recommended Guidelines range, the district court concluded that "the end result is there is no penalty imposed at all because of use of prescriptions for human growth hormone."

When considering that Congress provided a maximum sentence of 60 months' imprisonment for the conduct here, we conclude that the district court acted reasonably in concluding that Shortt should not be sentenced at a minimal level. Indeed, one could reasonably conclude that even 12 months' imprisonment--a sentence in the bottom 20% of the statutory range--was inadequate for Shortt's violations. There can be little doubt that the sentencing purposes stated in § 3553(a)(2) of recognizing [**22] the seriousness of Shortt's criminality and promoting respect for the law are better served by a 12-month sentence than a 6-month sentence.

Our conclusion that the district court's variance sentence was reasonable is reinforced by the Sentencing Commission's current judgment about the same offense for which Shortt stands convicted. Under the current version of the Sentence Guidelines, Shortt would be sentenced within the range of 15 to 21 months' imprisonment. Moreover, even this longer recommended sentence still would not take into account Shortt's prescriptions for human growth hormone. *See* U.S.S.G. § 2N2.1 cmt. n. 4 (2006). The current Sentencing Guidelines' conversion ratio of anabolic steroids to "units" is *20 times* higher than the 2004 Guidelines. *See id.* § 2D1.1, cmt. n.F. The current Guidelines also provide specific enhancements for using a masking agent to conceal the use of anabolic steroids and for distributing steroids to an athlete. *See id.* §§ 2D1.1(b)(6), (b)(7). Moreover, the Sentencing Commission's readjustment of the Sentencing Guidelines is consistent with Congress' views, as demonstrated by its enactment of the Anabolic [**23] Steroid Control Act of 2004.

In sum, the sentence of 12 months 1 day imposed by the district court was not unreasonable, and the district court did not abuse its discretion in entering a variance sentence in accordance with § 3553(a).

Shortt argues that these factors advanced to justify his variance sentence are inappropriate either because they are already taken into account in computing the recommended Guideline sentence or they are inappropriate to consider at all. For instance, he notes:

> If concealment of wrongdoing is a basis for a nonguideline sentence, then virtually every defendant should expect an upward variance. From the bank robber who wears a mask to the drug dealer using an alias, concealment of the wrongdoing is inherent in criminal activity.

This observation is surely true. But it does not address what troubled the district court. The district court was not focused on the concealment that attends crime generally but on Shortt's development of an unusually extensive program that involved sophisticated forms of drug delivery, flexible methods of drug application, and precautionary testing--all aimed at avoiding discovery. The program for avoidance [**24] of discovery was so pervasive that it perverted Shortt's licit medical practice, his medical records, and even his employees. It also enlisted his patients to become participants in the concealment effort. We believe that these matters were appropriately considered for a variance sentence and go to the nature of the offense and its seriousness, factors recognized as appropriate for consideration under § 3553(a). As a practical matter, extensive [*252] efforts to conceal demand greater punishment, because they make it less likely that authorities will detect the scheme. Proper deterrence thus requires longer sentences for those less likely to get caught. *See* 18 U.S.C. § 3553(a)(2)(B) (stating sentencing purpose of deterrence).

Likewise, Shortt argues that the district court inappropriately considered the quantities of drugs and the number of prescriptions as a basis for increasing his sentence. He contends that "[t]he court failed to note that every single one of [the] anabolic steroids is already accounted for in the defendant's underlying guidelines." To adjust a sentence based on a disagreement with the severity of punishment recommended by the Guidelines [**25] for a given quantity of drugs would, in Shortt's view, be inappropriate. While we have, indeed, held that a sentencing court may not second-guess the Sentencing Commissions' policy judgment of the proper punishment for particular drug quantities, *see United States v. Eura*, 440 F.3d 625, 632-33 (4th Cir. 2006), this case presents unique circumstances. The Guidelines' range did not reflect the Sentencing Commissions' considered judgment because the Commission exercised no judgment on aspects presented in this case. First of all, while steroids were addressed in the 2004 version of the Sentencing Guidelines, certain forms of steroids were not, such as creams and lozenges. Even though some form of conversion could be attempted, it necessarily would overlook the different ways that these various steroid forms function. Second, coupled with this imperfection in the treatment of steroids, the Sentencing Guidelines provided--and continue to provide--no guideline for violations of 21 U.S.C. § 333(e) (prohibiting the distribution of human growth hormone). In the absence of a Guideline, the district court referenced an analogous Guideline, which defined [**26] the quantity as a "loss" paid by the user of the substance. The district court correctly noted that in this case, however, that method of applying the Guidelines provided no enhancement to the sentence, leaving the distribution of human growth hormone unpunished. Finally, the fact that the Commission increased the conversion ratios for steroids following the enactment of the Anabolic Steroid Control Act of 2004 gave the district court reason to believe that the 2004 version of the Sentencing Guidelines for steroids was inadequate.

In addition, we recognize that the Sentencing Guidelines' recommended range is only one factor among others that must be considered in determining a sentence under § 3553(a). *See* 18 U.S.C. § 3553(a)(4). In most cases, the Guidelines range adequately weighs the particular circumstances of the defendant and the offense. But a fact that is taken into account in computing a Guidelines range is not excluded from consideration when determining whether the Guideline sentence adequately serves the four purposes of § 3553(a)(2). *See, e.g., United States v. Scherrer*, 444 F.3d 91, 94-95 (1st Cir. 2006) (approving a [**27] variance sentence justified by the especially heinous nature of the defendant's fraudulent schemes, which exploited relationships of trust); *United States v. Williams*, 425 F.3d 478, 481-82 (7th Cir. 2005) (approving a variance sentence justified by the defendant's extremely violent behavior at a young age). At bottom, the sentence must be "sufficient, but not greater than necessary, to comply with the [four] purposes set forth" in § 3553(a)(2). *See* 18 U.S.C. § 3553(a).

Furthermore, the district court did not focus on quantities as such but rather on the pervasiveness of Shortt's entire scheme over time and geography. Shortt had appeared on HBO to describe his national practice and stated that athletes came to him from all over the country. [*253] The court also noted that Shortt's efforts were not just a single, short-term, out-of-the-trunk venture that ended when the drugs were gone. Rather, this was an extended, ongoing conspiracy that was inadequately measured simply by the drug quantity.

Finally, Shortt argues that consideration of the fact that many of Shortt's patients were professional athletes was inappropriate: "With all due respect [**28] to the

district court, this factor has absolutely no place in the sentencing equation. Whether Barry Bond's home run record is accorded the same respect as the achievements of Babe Ruth, has no relevance to the appropriate punishment for Dr. Shortt's conduct." In addition, Shortt argues that the athletes were not victims, as the district court suggested, but were participants. As Shortt argues:

> Each of them was a coconspirator. They sought out Dr. Shortt for steroids or HGH knowing that their league prohibited their use. Most of their medical records reflect that their reason for seeking these medicines was for "performance enhancement." They willingly used the drugs and made obscenely large sums of money in the process.

Again, we do not suggest that Shortt's observations are incorrect; rather, they miss the point. The district court focused on the fact that professional sports draw intense public attention and are an inextricable part of our national culture. Professional athletes have extraordinary influence on admiring and aspiring young athletes. Shortt's destructive influence on our national games is a social consideration which is both important to the sentencing [**29] determination and unaccounted for in the Sentencing Guidelines. Indeed, this was one of the very reasons for which Congress enacted the Anabolic Steroid Control Act, *see* H.R. Rep. No. 108-461(I), at 4-6 (2004), and the Sentencing Commission amended these particular Sentencing Guidelines, enhancing the offense level if the defendant distributes the steroids *to an athlete*, *see* U.S.S.G. § 2D1.1(b)(7) (2006). Simply stated, both Shortt's criminal conduct and his sentence are public affairs, and the district court was legitimately concerned that an overly lenient sentence would understate the "seriousness of the offense" and undermine "respect for the law." The public visibility of this case also reenforced the need to stress the "just punishment" purpose of sentencing and its deterrence. *See* 18 U.S.C. § 3553(a)(2)(A), (B).

The district court considered a properly calculated Sentencing Guidelines range and, using care and reason, concluded that it did not adequately serve the primary sentencing purpose stated in § 3553(a)(2)(A). We conclude that the district court's analysis and detailed findings demonstrate the reasonableness [**30] of its variance sentence. Accordingly, its judgment is

*AFFIRMED.*