STATE OF NEW YORK : DEPARTMENT OF HEALTH

STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT

-----------------------------------------X

| | |
|---|---|
| IN THE MATTER | : STATEMENT |
| OF | : OF |
| ANA MARIA SANTI, M.D. | : CHARGES |

-----------------------------------------X

ANA MARIA SANTI, M.D., the Respondent, was authorized to practice medicine in New York State on August 1, 1972, by the issuance of license number 113491 by the New York State Education Department. Respondent is currently registered with the New York State Education Department to practice medicine from a registered address at 3 Holder Place, Forest Hills, New York 11375.

## FACTUAL ALLEGATIONS

A. On or about May 2, 1994, the Respondent Ana Maria Santi, M.D., entered into an Application for Consent Order and order in case BPMC #94-69 in settlement of a pending professional medical conduct investigation. This investigation involved charges and allegations that the Respondent had been dependent on, and a habitual user of alcohol since prior to 1980, with periods of sobriety followed by relapse with alcohol and librium. By virtue of this misconduct, she was charged with committing professional misconduct in that she had been a habitual abuser of alcohol within the meaning of N.Y. Educ. Law §6530(8). BPMC Order #94-69 imposed a penalty suspending Respondent's license to practice medicine in the State of New York for a period of one

year, the suspension was stayed, and placing Respondent on probation for a period of five years subject to the terms enumerated in an exhibit attached to the Order. Said Consent Order, Application for Consent Order, Statement of Charges, and Term of Probation are hereto attached and made a part hereof.

A(1) Respondent practiced medicine in violation of the terms and conditions of her probation under BPMC Order #94-69 on the following dates and at the following locations.

a. On or about and between October 1997 and March 9, 1998, at the LaFontaine-Rish Medical Associates Office, 315 West 57th St., New York, New York, including but not limited to providing anesthesia services to Patient A during a procedure which resulted in the death of the patient.

b. On or about and between the fall of 1996 and March 9, 1998, for a company known as "Crown Medical," at 133 East 58th Street, New York, New York.

c. On or about and between May 2, 1994 and March 9, 1998, with Bipin Solanki, M.D., in New York City.

d. On or about and between 1995 and December 1997, with Peter Corines, M.D. in New York City.

B. On or about and between May 13, 1994 and March 9, 1998, Respondent failed to inform the Director of OPMC that she was working as a physician at the locations specified in paragraph A, and failed to provide the Director with written notice of her employment and practice at those locations and during those periods.

(B)(1) Respondent engaged in this conduct knowingly

(B)(1) Respondent engaged in this conduct knowingly and with intent to deceive the Director.

C. On or about and between May 13, 1994 and March 9, 1998, Respondent made false representations to the Director's staff that she was not practicing medicine. These representations, which were knowingly made with intent to deceive, include, but are not limited to, the following:

1. On or about November 18, 1996, in an interview precipitated by a report of a positive screen for the presence of morphine in her urine, Respondent reviewed the terms of her probation with OPMC Medical Director Nathan P. Reed, M.D. and Probation Unit Supervising Investigator Cheryl B. Ratner, and she informed Dr. Reed and Ms. Ratner that she was not engaged in the practice of medicine.

2. In a letter dated July 7, 1995, Respondent advised OPMC Case Coordinator Suzanne L. Ellsworth that she was "aware of the fact that will need a working monitor if I go back to practice. At present time I am not working, if my situation changes I will notify you."

3. In a telephone conversation with Dr. Santi on March 9, 1998, Dr. Santi told Supervising Investigator Cheryl B. Ratner that she was not engaged in the practice of medicine, and that she has "no practice" other than

doing charts and filling in paperwork.

D. On or about and between May 13, 1994 and March 9, 1998, Respondent made false representations to representatives of the Medical Society of the State of New York, Committee for Physician's Health, that she was not practicing medicine. These representations were knowingly made with intent to deceive.

**SPECIFICATIONS 1, 2, 3, 4, 5, AND 6**
**VIOLATING PROBATION**

Respondent is charged with professional misconduct under New York Education Law Section 6530(29) by reason of her violating any term of probation or condition or limitation imposed on the licensee pursuant to §230 of the Public Health Law, in that Petitioner charges:

1. The facts in Paragraph A and A(1)(a).
2. The facts in Paragraph A and A(1)(b).
3. The facts in Paragraph A and A(1)(c).
4. The facts in Paragraph A and A(1)(d).
5. The facts in Paragraph B.
6. The facts in Paragraph C, C(1),C(2) and C(3),singularly and in combination.

**SEVENTH SPECIFICATION**
**PRACTICING FRAUDULENTLY**

Respondent is charged with professional misconduct under New York Education Law Section 6530(2) by reason of her practicing the profession fraudulently, in that Petitioner charges:

7. The facts in Paragraphs B, B(1), C, C(1), C(2), C(3) and D, singularly and in combination.

**EIGHTH SPECIFICATION**
**CONDUCT EVIDENCING MORAL UNFITNESS**

Respondent is charged with professional misconduct under New York Education Law Section 6530(20) by conduct in the practice of medicine evidencing moral unfitness to practice medicine, in that Petitioner charges:

8. The facts in allegations A, B, C and D, and their subparagraphs, singularly and in combination.

DATED: March 16, 1998
Albany, New York

WILLIAM J. COMISKEY
Chief Counsel
Bureau of Professional
Medical Conduct