# STATE OF NEW YORK
## DEPARTMENT OF HEALTH

433 River Street, Suite 303 Troy, New York 12180-2299

Antonia C. Novello, M.D., M.P.H.
*Commissioner*

Dennis P. Whalen
*Executive Deputy Commissioner*

PUBLIC

November 8, 1999

**CERTIFIED MAIL - RETURN RECEIPT REQUESTED**

Ana Maria Santi, M.D.
3 Holder Place
Forest Hills, New York 11375

Anthony Benigno, Esq.
NYS Department of Health
Hedley Park Place
433 River Street – Fourth Floor
Troy, New York 12180

**RE: In the Matter of Ana Maria Santi, M.D.**

Dear Parties:

Enclosed please find the Determination and Order (No.99-270) of the Hearing Committee in the above referenced matter. This Determination and Order shall be deemed effective upon the receipt or seven (7) days after mailing by certified mail as per the provisions of §230, subdivision 10, paragraph (h) of the New York State Public Health Law.

Five days after receipt of this Order, you will be required to deliver to the Board of Professional Medical Conduct your license to practice medicine if said license has been revoked, annulled, suspended or surrendered, together with the registration certificate. Delivery shall be by either certified mail or in person to:

Office of Professional Medical Conduct
New York State Department of Health
Hedley Park Place
433 River Street - Fourth Floor
Troy, New York 12180

If your license or registration certificate is lost, misplaced or its whereabouts is otherwise unknown, you shall submit an affidavit to that effect. If subsequently you locate the requested items, they must then be delivered to the Office of Professional Medical Conduct in the manner noted above.

As prescribed by the New York State Public Health Law §230, subdivision 10, paragraph (i), and §230-c subdivisions 1 through 5, (McKinney Supp. 1992), "the determination of a committee on professional medical conduct may be reviewed by the Administrative Review Board for professional medical conduct." Either the licensee or the Department may seek a review of a committee determination.

Request for review of the Committee's determination by the Administrative Review Board stays penalties other than suspension or revocation until final determination by that Board. Summary orders are not stayed by Administrative Review Board reviews.

All notices of review must be served, by certified mail, upon the Administrative Review Board and the adverse party within fourteen (14) days of service and receipt of the enclosed Determination and Order.

The notice of review served on the Administrative Review Board should be forwarded to:

James F. Horan, Esq., Administrative Law Judge
New York State Department of Health
Bureau of Adjudication
Hedley Park Place
433 River Street, Fifth Floor
Troy, New York 12180

The parties shall have 30 days from the notice of appeal in which to file their briefs to the Administrative Review Board. Six copies of all papers must also be sent to the attention of Mr. Horan at the above address and one copy to the other party. The stipulated record in this matter shall consist of the official hearing transcript(s) and all documents in evidence.

Parties will be notified by mail of the Administrative Review Board's Determination and Order.

Sincerely,

Tyrone T. Butler, Director
Bureau of Adjudication

TTB:nm
Enclosure

**STATE OF NEW YORK : DEPARTMENT OF HEALTH**
**STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT**

COPY

| IN THE MATTER OF ANA MARIA SANTI, M.D. | DETERMINATION AND ORDER |
|---|---|
| | BPMC-99-270 |

A Commissioner's Order and Notice of Hearing and a Statement of Charges, dated August 11, 1999, were served upon the Respondent, Ana Maria Santi, M.D. **EDWARD C. SINNOTT, M.D. (Chair), SHELDON H. PUTTERMAN, M.D.** and **NANCY J. MACINTYRE, R.N., PhD.** duly designated members of the State Board for Professional Medical Conduct, served as the Hearing Committee (hereinafter the Committee) in this matter pursuant to Section 230(10)(e) of the Public Health Law. **JEFFREY W. KIMMER, ADMINISTRATIVE LAW JUDGE,** served as the Administrative Officer. The Department of Health appeared by Anthony M. Benigno, Esq., Assistant Counsel. The Respondent did not appear in person or by counsel. Evidence was received and witnesses sworn and heard and transcripts of these proceedings were made.

After consideration of the entire record, the Committee issues this Determination and Order.

## PROCEDURAL HISTORY

| | |
|---|---|
| Date of Notice of Hearing and Statement of Charges: | August 11, 1999 |
| Date of Hearing: | August 25, 1999 |
| Deliberations Held: | September 27, 1999 |

## STATEMENT OF CASE

By an Order dated August 11, 1999, the Commissioner of Health summarily suspended the medical license of the Respondent, Ana Maria Santi, M.D., upon a finding that her continued practice of medicine would constitute an imminent danger to the health of the people of this state. More specifically, the accompanying Statement of Charges alleged nineteen specifications of professional misconduct, including allegations of the fraudulent practice of medicine, failure to comply with state law, a violation of a condition of licensure and willfully filing a false report. Following the hearing on this matter the Committee issued its report on imminent danger. The Committee recommended that the summary suspension of Respondent's license be maintained pending the ultimate resolution of the case.

By an Order dated September 22, 1999, the Commissioner ordered that the summary suspension be continued. A copy of the Statement of Charges is attached to this Determination and Order as Appendix I.

## FINDINGS OF FACT

The following Findings of Fact were made after a review of the entire record in this matter. Having heard testimony and considered evidence presented, the Committee hereby makes the following findings of fact. Conflicting evidence, if any, was considered and rejected in favor of the evidence cited. Numbers in parentheses refer to transcript page numbers or exhibits. These citations represent evidence found persuasive in arriving at a particular finding. All Findings of Fact were established by at least a preponderance of the evidence.

1. Ana Maria Santi, M.D., the Respondent, was authorized to practice medicine in New York State on August 1, 1972, by the issuance of license number 113491 by the New York State Education Department (Ex. 3).
2. Respondent received her education in Argentina, attending school there from 1949-1965 (Ex. 3).

3. Pursuant to an agreement with the Respondent, wherein the Respondent did not contest eight specifications of misconduct, including fraudulent practice, moral unfitness and probation violations, the Board disciplined Respondent by issuance of BPMC Order No. 98-86,effective May 11, 1998. That Order suspended her

license, wholly and indefinitely for a minimum period of thirty (30) months. Condition "1." of Order No. 98-86 required the Respondent to cooperate fully during, the period of her license suspension, with any and all investigations and prosecutions, providing full and truthful information and testimony regarding any matter within her knowledge. Such cooperation had to be provided at the direction of the Director of OPMC to any and all government entities, Federal, State or local, in investigations and or litigation of any matter whether administrative, civil or criminal. (Ex. 6).

4. On or about June 22, 1998, Respondent provided anesthesia to Patient A at the medical office of Peter Corines, M.D. in Queens, New York. (T. 88-89)

5. On or about June 24, 1998, Respondent provided anesthesia to Patient B at the medical office of Peter Corines, M.D. in Queens, New York for sclerotherapy treatments on the veins of Patient B's legs. (T. 64-65, 89-90)

6. On or about July 28, 1998, Respondent provided anesthesia to Patient C at the medical office of Peter Corines, M.D. in Queens, New York for a sygmoidoscopy. (T. 38-40)

7. On or about December 4, 1998, Respondent provided anesthesia to Patient D at the medical office of Peter Corines, M.D. in Queens, New York in a procedure to correct a condition of puffiness and darknes on the skin underneath her eyes. (T. 14-17)

8. On or about December 30, 1998, Respondent provided anesthesia to Patient D at the medical office of Peter Corines, M.D. in Queens, New York during a follow up procedure to the December 4, 1998 surgery. (T. 18-20)

9. The Respondent worked at the medical office of Peter Corines, M.D. in Queens, New York, as a physician from on or about April, 1998, through January

1999. (T. 50-51)

10. Respondent does not holds any New York license which would permit her to administer intravenous solutions or medications. (Exs. 7-11)

11. On three occasions between August 6, 1998 and March 29, 1999,while the Respondent's license to practice medicine was suspended, she submitted sworn Quarterly Statements to OPMC that she was not working as a physician when in fact she was. In the Quarterly Statement submitted on March 29, 1999, the Respondent swore that she was employed at Medical Surgical Consultants as a medical assistant. (Exs. 12-14)

12. On or about April 21, 1999, the Director of the Physician Monitoring Program for the OPMC requested the Respondent to appear at her office on April 30, 1999, for an examination under oath. The Respondent did not appear. (T. 83; Ex. 15)

## Conclusions

The following conclusions were made pursuant to the Findings of Fact listed above. The Committee concluded that the following Factual Allegations were proven by a preponderance of the evidence (the paragraphs noted refer to those set forth in the Statement of Charges, Factual Allegations). The citations in parentheses refer to the Findings of Fact (supra), which support each Factual Allegation:

**Paragraph A.**: (3);

**Paragraph B.**: (4);

**Paragraph C.**: (5);

**Paragraph D.**: (6);

**Paragraph E.**: (7);

**Paragraph F.**: (8);

**Paragraph G.**: (3-8);

**Paragraph H.**: (9,10);

**Paragraph I.**: (11);

**Paragraph J.**: (11);

**Paragraph K.**: (11);

**Paragraph L.**: (12).

The Committee further concluded that the following Specifications should **be sustained**. The citations in parentheses refer to the Factual Allegations from the Statement of Charges, which support each specification:

## PRACTICING THE PROFESSION FRAUDULENTLY

**First through Fifth Specifications:** (Paragraphs A. – F);

## FAILURE TO COMPLY WITH A STATE LAW

**Sixth through Tenth Specifications :** (Paragraphs A. – F.);

## VIOLATION OF A CONDITION IMPOSED ON A LICENSEE

**Eleventh through Sixteenth Specifications :** (Paragraphs A. – F., L.);

## WILLFULLY FILING A FALE REPORT

**Seventeenth through Nineteenth Specifications :** (Paragraphs A. – F., I. – K.).

## DISCUSSION

Respondent was charged with violating four subdivisions of professional misconduct within the meaning of Education Law §6530. This statute sets forth numerous forms of conduct which constitute professional misconduct, but does not provide definitions of the various types of misconduct. During the course of its deliberations on these charges, the Committee consulted a memorandum from the General Counsel for the Department of Health. This document, entitled "Definitions of Professional Misconduct Under the New York Education Law", sets forth a suggested definition for the fraudulent practice of medicine.

The following definition was utilized by the Committee during its deliberations:

**Fraudulent Practice of the Profession** is an intentional misrepresentation or concealment of a known fact. An individual's knowledge that he/she is making a misrepresentation or concealing a known fact with the intention

to mislead may properly be inferred from certain facts.

Using the above-referenced definition as a framework for its deliberations, the Committee unanimously concluded, by a preponderance of the evidence, that the specifications of professional misconduct relating to fraud should be sustained. The rationale for the Committee's conclusions in sustaining all of the specifications is set forth below.

Initially, the Committee concluded that the person described by the patients and the former office worker from Dr. Corines' office was the Respondent. The Petitioner's witnesses were found to be credible and established that it was the Respondent who committed the alleged acts of misconduct.

Respondent signed a consent agreement on April 21, 1994, wherein she admitted to being a "dependent, habitual abuser of alcohol since prior to 1980, with periods of sobriety followed by relapse with alcohol and Librium." BPMC Order No. 94-69, effective May 13, 1994, in addition to one year suspension stayed, placed Respondent on five years probation along with monitoring terms designed to protect the public. BPMC Order No. 94-69 required a practice supervisor and practice site approval by the Office of Professional Medical Conduct (OPMC). Respondent's history of alcohol and drug impairment constituted a danger to the health of the people of the state of New York.

Respondent intentionally violated the terms of probation by practicing at four different practice locations without ever notifying OPMC of her intention to practice at those locations. She did so knowingly and with intent to deceive. On four separate occasions, between May 13, 1994 and March 9, 1998, Respondent knowingly and with intent to deceive made false representations to OPMC wherein she stated she was not practicing medicine. These intentional deceptions deprived

the people of the state of New York of the opportunity to supervise Respondent, a previously impaired physician. Tragically, during this period of noncompliance, Respondent provided anesthesia in a procedure which resulted in a patient death.

After these new acts of misconduct were uncovered, Respondent entered into a second disciplinary agreement, BPMC No. 98-86. The sanction for her acts of misconduct included license suspension, wholly and indefinitely for a period of no less than thirty (30) months, as well as various conditions, effective on May 11, 1998.

Despite being given a second opportunity to keep her medical license, Respondent almost immediately began working as a physician in the medical office of Peter Corines, M.D. Respondent was the anesthesiologist in at least five procedures between June 22, 1998 and December 30, 1998. Additionally, Respondent administered intravenous therapy to various patients while her medical license was suspended and without any other license which would allow her to do so. Respondent continued to deceive OPMC by submitting falsely sworn to declarations regarding her employment. In direct violation of BPMC Order No. 98-86, she refused to appear for an examination by OPMC investigating her alleged misconduct despite the unequivocal condition of the order that she cooperate with any and all investigations, Federal, State or local whether they be administrative, civil or criminal. Respondent's continued unsupervised and unlawful practice of medicine constituted a danger to the health of the people of the state of New York.

The Respondent was charged with five specifications of fraudulent practice regarding the five procedures at the medical office of Peter Corines, M.D. in Queens, New York from on or about June 22, 1998 through on or about December 30, 1998. "Fraudulent practice of medicine is an intentional misrepresentation or

concealment of a known fact. An individual's knowledge that he/she is making a misrepresentation or concealing a known fact with the intention to mislead may properly be inferred from certain facts" (memorandum noted above). A committee may infer the licensee's knowledge and intent properly from facts that such committee finds. This Committee does make such an inference. Respondent intentionally concealed a known fact from patients A, B, C and D, that her license to practice medicine was suspended. Respondent signed the consent agreement which suspended her license for a minimum period of thirty months. Her intention to mislead these patients is inferred from the facts. This was not just an innocent omission by the Respondent. It is questionable whether any of these patients would have gone through with the procedures if they knew that Respondent's license to practice medicine was suspended. The concealment of the fact that Respondent's medical license was suspended did not constitute an innocent misinterpretation on her part.

Condition "1" of BPMC Order No. 98-86 required Respondent to cooperate fully with any and all investigations and provide truthful information regarding any matter within her knowledge. During an investigation into Respondent's alleged violation of BPMC Order No. 98-86, OPMC requested that Respondent appear for an examination. Respondent refused to cooperate and did not appear for her examination, a direct violation of an explicit condition of the order.

Respondent received notice of the proceeding and in a conference call on August 24, 1999 with Administrative Law Judge and Counsel for the Petitioner. Respondent informed both parties that she probably would not appear. In fact, she did not appear at the hearing. The Committee can draw a negative inference from her failure to appear and does so.

Respondent offered no proof in contravention of any of the Petitioner's charges. The Petitioner has met it's burden of proof.

## DETERMINATION AS TO PENALTY

The Committee, pursuant to the Findings of Fact and Conclusions set forth above, unanimously determined that Respondent's license to practice medicine in New York State should **be revoked**. This determination was reached upon due consideration of the full spectrum of penalties available pursuant to statute, including revocation, suspension and/or probation, censure and reprimand, and the imposition of monetary penalties.

The Petitioner's burden of proof has been met. Respondent, a previously impaired physician has demonstrated a blatant disregard for the Board's previous orders. She did not abide by BPMC Order No. 94-69 nor did she abide by BPMC Order No. 98-86 which suspended her medical license for a minimum of thirty months. She practiced medicine unlawfully without any supervision or review.

A previously impaired physician, who repeatedly will not honor the authority of the Board represents a grave and imminent danger to the health of the people of the state of New York. Respondent lacks the moral integrity necessary to practice medicine. She has time and again placed her interests above those of her patients. Any individual who receives a license to practice medicine is placed into a position of public trust. Respondent has forfeited her right to that public trust, by unnecessarily putting his patients at risk.

In order to truly protect the public the Committee must revoke Respondent's license. Furthermore, the Committee strongly recommends that should the Respondent ever seek to obtain her license again, such request be denied..

**ORDER**

Based upon the foregoing, **IT IS HEREBY ORDERED THAT:**

1. The **First** through **Nineteenth** Specifications of professional misconduct, as set forth in the Statement of Charges (Appendix 1) are **SUSTAINED;**

2. Respondent's license to practice medicine in New York State be and hereby is **REVOKED.**

DATED: New York, New York

November 1, 1999

Edward C. Sinnott M.D.

**EDWARD C. SINNOTT, M.D. (Chair)**
**SHELDON H. PUTTERMAN, M.D.**
**NANCY J. MACINTYRE, R.N., PhD.**

APPENDIX I