STATE OF NEW YORK ALBANY COUNTY COURT

---

THE PEOPLE OF THE STATE OF NEW YORK

-against-

ANNA MARIE SANTI,

Defendant.

---

# P L E A   P R O C E E D I N G S

**B E F O R E:** HON. STEPHEN W. HERRICK
County Court Judge

**A P P E A R A N C E S:**

HON. P. DAVID SOARES
Albany County District Attorney
For the People
BY: CHRISTOPHER BAYNES,
Assistant District Attorney

HON. EUGENE P. DEVINE
Albany County Public Defender
For the Defendant
BY: JAMES MILSTEIN,
Assistant Public Defender

ALSO PRESENT:
THE DEFENDANT

**D A T E:** March 20, 2007

***P R O C E E D I N G S:***

THE COURT: This is in the matter of the People vs. Anna Marie Santi. Ms. Santi, with whom I'm familiar, appears here today in person. She appears with her attorney, Mr. Milstein. The People are represented by Mr. Baynes.

And, Mr. Milstein, are you retained or is this a Public Defender matter?

MR. MILSTEIN: No, Judge, this is a Public Defender case.

THE COURT: There is a proposal to resolve Sealed Indictment 30-1314, Ms. Santi, by a plea of guilty to a reduced first count of the indictment, a Class D felony of Criminal Diversion of Prescription Medications and Prescriptions in the Second Degree, in violation of Section 178.20 of the Penal Law. If there is a plea on this, it would be made by you as a predicate offender. And the proposal is that upon your plea, I would adjourn this for sentencing. And right now I would put it out for control purposes and possible sentencing to May 8th, 2007, at which time, all things being equal, you would receive as a predicate offender within a range of sentence a maximum of three to six years in State Prison and

a minimum of two to four years in State Prison. The plea bargain requires full, total, and truthful cooperation. You would be required to pay a surcharge and victim fee of $270, plus a $50 DNA databank fee out of inmate funds, and you would be waiving and giving up your right to appeal.

Mr. Milstein, is that your understanding of the plea bargain?

MR. MILSTEIN: Yes, Your Honor.

THE COURT: And, Mr. Baynes, is that the People's understanding?

MR. BAYNES: That's correct, Your Honor.

THE COURT: Ms. Santi, is that your understanding?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are you in agreement with that proposal?

THE DEFENDANT: Yes, Your Honor.

THE COURT: In just a moment, Ms. Santi, I'm going to have you sworn in. You will be placed under oath by my Court Clerk, and once that occurs, all of your answers and responses will be sworn. You need to keep that in mind so that everything that you say here today is accurate and

truthful. If at any time during today's proceedings you don't understand something or you have a question, let me know. I'll stop the proceedings and I will give you a chance to speak to your attorney, or if you wish, you may ask me a question as long as Mr. Milstein consents.

Do you understand everything I said?

THE DEFENDANT: Yes, Your Honor.

THE COURT: To the best of your ability, I'm going to ask you to raise your right hand and I will have you sworn in.

(Whereupon, the Defendant was first duly sworn by the Clerk of the Court.)

THE COURT: Are you Anna Marie Santi?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You appear here with your attorney Mr. Milstein?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Did you hear me outline the plea bargain on the record just a moment ago?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Is that your understanding of the plea bargain?

THE DEFENDANT: Yes.

THE COURT: Do you understand the plea

bargain as I stated it?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are you in agreement with that proposal?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are you, in fact, asking the Court to resolve Sealed Indictment 30-1314 by a plea of guilty to a reduced first count, a D felony of Criminal Diversion of Prescription Medications and Prescriptions in the Second Degree, in accordance with the plea bargain that I outlined?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And, Mr. Milstein, is that your understanding of the plea bargain and your application?

MR. MILSTEIN: Yes, Your Honor.

THE COURT: Mr. Baynes, is that the People's understanding?

MR. BAYNES: It is, Your Honor.

THE COURT: Now, Ms. Santi, do you understand that you have an absolute right to remain silent in the face of the charges pending against you in this multi-count indictment, but that if you plead guilty here today in accordance

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you wish to proceed with it?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. I draw your attention to Count 1 of Sealed Indictment 30-1314. You will be allowed to resolve not only Count 1, but the full indictment by a plea of guilty to a reduced first count of Criminal Diversion of Prescription Medications and Prescriptions in the Second Degree, in violation of Section 178.20 of the Penal Law. This is a D felony.

And the allegation is that you, between January 1, 2005, and September 1, 2006, at the Department of Health in the City and County of Albany, New York, and 100-01 Metropolitan Avenue, Suite 2F, in Queens, New York, that you committed a criminal diversion act and that the value of the benefit exchanged is in excess of $3,000.

Specifically it's alleged that at that time, date, and place and during that period of time and at those locations, you committed a criminal diversion act by signing bogus or false prescriptions for drugs totaling in excess of $3,000, and in fact the indictment charged in

excess of $50,000, from your criminal associate, Oasis Longevity, purportedly signed by a physician located in the State of New York, a Dr. Abdul Almarashi, as signed by you, Anna Marie Santi, a doctor suspended from practice, at 100-01 Metropolitan Avenue, Suite 2F, Queens, New York, that you did this with knowledge or reasonable grounds to know that there was no medical need for the medicine and/or the prescriptions were false, were bogus.

Is that a true and accurate statement?

THE DEFENDANT: It is, Your Honor.

THE COURT: During the period from January 1, 2005, through and including September 1, 2006, did you issue prescriptions as a suspended doctor for steroids and other medications that you knew there were no medical needs for and/or that the prescriptions were bogus?

THE DEFENDANT: Yes.

THE COURT: And this was through Dr. Abdul Almarashi?

THE DEFENDANT: Yes.

THE COURT: And how did this happen? Did you receive the referrals from that doctor?

THE DEFENDANT: No, that doctor was in

California and I just called him on the phone to inform him.

THE COURT: Tell me how this worked.

THE DEFENDANT: My company would send us the prescriptions.

THE COURT: What company would that be?

THE DEFENDANT: There was one in New Jersey. It was called American Pharmaceuticals.

(Whereupon, Counsel and Defendant confer.)

THE DEFENDANT: Oasis was in Florida and they would send me faxes. They would send the papers with several names of patients and what they wanted prescribed, and at the bottom of the page they wanted Dr. Almarashi's signature, and I called Dr. Almarashi and I spoke with him and he agreed that when you get that, just sign them and send them back, fax them back.

THE COURT: What name?

THE DEFENDANT: Almarashi.

THE COURT: So you signed Dr. Almarashi's name based on a telephone conversation or conversations with him?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And to your knowledge had Dr. Almarashi ever seen any of those patients?

THE DEFENDANT: No, he didn't see those patients.

THE COURT: Did he know anything about any of those patients, other than their names?

THE DEFENDANT: Only from what he would tell me. Like Oasis never sent -- send like the history of the patient and what prescription they needed, and that is the only -- and a laboratory report, if that patient took one, but never to see them personally.

THE COURT: Based on the facts and circumstances of these -- the system of referrals, did you know or have a reasonable basis to know that there was no medical need for the prescriptions to these people whose names you received from Oasis?

THE DEFENDANT: Yes, there was no medical need.

THE COURT: Or that the prescriptions were false, they were bogus? Do you know what the word "bogus" is, that they were fraudulent or false prescriptions, they were totally medically unnecessary; is that correct?

THE DEFENDANT: That's correct. The patients usually wanted them because they didn't

want to age. They were aging or their hair was falling off, something like that, not for medical reasons.

THE COURT: Do you mean that Oasis, the lab, had never seen these people and had no doctors to have interviewed these people?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. And you got the names from Oasis; is that correct?

THE DEFENDANT: Yes.

MR. BAYNES: Your Honor, I just have a few questions.

You were paid $25 per prescription?

THE DEFENDANT: Right, $20 to $25, depends.

MR. BAYNES: Okay. In the month of April 2006, you billed $5,800 to Oasis for various people's prescriptions?

THE DEFENDANT: Yes.

THE COURT: Did you receive that $5,800?

THE DEFENDANT: No, they never paid.

THE COURT: During the period of time from January 1, 2005, to September 1, 2006, did you receive in excess of $3,000 from Oasis?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right.

MR. BAYNES: Just one other thing: Did you consult with Almarashi on all of these people or just in general when they were coming in?

THE DEFENDANT: In general.

MR. BAYNES: Okay, very good.

THE DEFENDANT: The patient be healthy and -- the patient had to prove that they were healthy and that they did not -- they were not with any other disease.

MR. BAYNES: Let me just say this though: You didn't perform physicals on these people?

THE DEFENDANT: No.

MR. BAYNES: So you were taking their word for it?

THE DEFENDANT: Correct.

MR. BAYNES: Okay.

THE COURT: How do you plead to Criminal Diversion of Prescription Medications and Prescriptions in the second degree in violation of Section 178.20 of the Penal Law?

THE DEFENDANT: Guilty.

THE COURT: The Court accepts your plea of guilty, Ms. Santi. I'll remand you to the custody of the Sheriff for sentencing or control on May 8th, 2007. Thank you. You're all set.

(Whereupon, the proceedings in the above-entitled matter were concluded, this date.)

* * *

## C E R T I F I C A T I O N

I, JACQUELYN BURKE GECEWICZ, a Senior Court Reporter, Unified Court System, Third Judicial District, State of New York, do hereby CERTIFY that the foregoing is a true and accurate stenographic transcript of the proceedings, to the best of my ability, held in the above-entitled matter, before the HON. STEPHEN W. HERRICK on March 20, 2007.

JACQUELYN BURKE GECEWICZ